UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>THOMAS AVERY DRUM,<br><br>Defendant. | 1:22-CR-10040-CBK<br><br>MEMORANDUM OPINION<br>AND ORDER |

Defendant was convicted by a jury of aggravated sexual abuse of a child and abusive sexual contact. He has filed a motion for judgment of acquittal pursuant to Fed. R. Crim. P. 29(a) and a motion for a new trial pursuant to Fed. R. Crim. P. 33(a).

**I. Judgment of Acquittal.**

"Federal Rule of Criminal Procedure 29(a) requires a district court to 'enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction.'" United States v. Broeker, 27 F.4th 1331, 1335 (8th Cir. 2022). A district court has very limited latitude to grant a judgment of acquittal under Rule 29. United States v. Hassan, 844 F.3d 723, 725 (8th Cir. 2016). The court "must not assess witness credibility or weigh evidence." Id. The evidence must be viewed in favor of the jury's verdict. United States v. Frommelt, 971 F.3d 823, 827 (8th Cir. 2020). "The verdict must be upheld 'if there is any interpretation of the evidence that could lead a reasonable-minded jury to find the defendant guilty beyond a reasonable doubt.'" United States v. Espinoza, 885 F.3d 516, 520 (8th Cir. 2018) (quoting United States v. Taylor, 813 F.3d 1139, 1146 (8th Cir. 2016)). "Reversal is warranted only where no reasonable jury could have found the defendant guilty beyond a reasonable doubt." United States v. Oliver, 950 F.3d at 565 (quoting United States v. Donnell, 596 F.3d 913, 924 (8th Cir. 2010)).

To convict the defendant of aggravated sexual abuse of a child, as charged in Count I, the government was required to prove, beyond a reasonable doubt, that:

    1. Defendant voluntarily and intentionally caused, or attempted to cause J.L.K. to engage in a sexual act, that is, the intentional touching, not through the clothing, of the genitalia of J.L.K., with the intent to abuse, humiliate, harass, or degrade J.L.K., or to arouse or gratify the sexual desire of the defendant.

    2. At the time of the offense, J.L.K. had not attained the age of 12 years.

    3. The defendant is an Indian; and

    4. The offense occurred in Indian Country.

18 U.S.C. §§ 2241(c), 2246(2)(D). To convict the defendant of abusive sexual contact, as charged in Count II, the government was required to prove, beyond a reasonable doubt, that:

    1. Defendant voluntarily and intentionally caused, or attempted to cause J.L.K. to engage in sexual contact, that is, the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of J.L.K., with the intent to abuse, humiliate, harass, or degrade J.L.K., or to arouse or gratify the sexual desire of the defendant.

    2. At the time of the offense, J.L.K. had not attained the age of 12 years.

    3. The defendant is an Indian; and

    4. The offense occurred in Indian Country.

18 U.S. C. §§ 2244(a)(5) and 2246(3). The defendant stipulated to the last two elements of each of the offenses. The age of J.L.K. at the time of the alleged abuse was established and was not contested.

    The jury was instructed that the crimes included an attempt to commit the crime in question. "The defendant may be found guilty of an attempt if he intended to engage in the activities alleged in the indictment and he knowingly and intentionally carried out some act which was a substantial step toward the commission of the alleged activity."

    J.L.K. was age 16 at the time of her testimony. She alleged that the touching occurred when she was age 7. J.L.K. testified that she was naked in the bathtub when the defendant, who was naked, got into the tub and put her on his lap. She stated that "he tried to touch me but −" and was interrupted by the prosecutor's question "where did he

try to touch you.?"  She replied, "my private."  Upon further questioning by the prosecutor as to what she called her "private," she stated, "down there."  When the prosecutor asked her what the formal word is for her "private," she replied, "vagina." J.L.K. then testified as follows:

> Q: Okay. You say he tried to touch you. What do you mean by that? Was he able to touch you on your vagina?
>
> MS. MINER: Your Honor, objection. That's leading.
>
> THE COURT: Overruled.
>
> A: Yeah.
>
> Q: (BY MR. JEHANGIRI) What was he using when he touched you?
>
> A: His hands.
>
> Q: What else did you notice or feel?
>
> A: His -- he was trying to put his thing in mine.
>
> Q: What do you mean by "thing"?
>
> A : His penis.
>
> Q: Okay. And what do you use for the word "penis"?
>
> A: I don't know. That's what I call it.
>
> Q: Okay. Was he able to put his thing anywhere in you?
>
> A: No. I got out before he tried.
>
> Q: What was -- was there any reaction with his penis while he was in the tub with you?
>
> A: No.
>
> Q: Was it -- was it -- was his penis erect or was it not erect?
>
> MS. MINER: Your Honor, I would object. That's leading, especially given her previous answer.
>
> THE COURT: Overruled.
>
> A: What does that mean?
>
> Q: (BY MR. JEHANGIRI) Well, was it -- was it stiff or was it not stiff?
>
> A: Oh. Stiff.

MS. MINER: Your Honor, again, I would object as leading, given her answers.

THE COURT: Overruled.

A: It was stiff.

Q: (BY MR. JEHANGIRI) Where did you feel his stiff penis?

MS. MINER: Your Honor, I would object. These are leading questions.

THE COURT: You may have a standing objection. Overruled.

A: Under my vagina.

The foregoing was sufficient evidence to establish the elements that the defendant caused, or attempted to cause J.L.K. to engage in a sexual act, that is, the intentional touching, not through the clothing, of the genitalia of J.L.K., with the intent to arouse or gratify the sexual desire of the defendant.

The prosecution also questioned J.L.K. about whether there was another occasion where the defendant touched her.

Q: (BY MR. JEHANGIRI) Were there other occasions that the defendant touched you?

A: In his house?

Q: Yes, in his house.

A: We were in his bedroom on the bed.

Q: What were you doing?

A: Sleeping. Then I -- when I woke up, I was bleeding all over.

Q: Where were you bleeding from?

A: My vagina. It was all over the bed, the blood.

Q: What did you do when you saw that?

A: Told S.D.

Q: And what did -- what happened -- what happened next?

A: I told Tom to take me home because I thought it may be my period. I don't know.

Q: Okay. And how do you know -- did he touch you on that occasion?

A: Yeah.

4

Q: Okay. And how did he do that? With what? Was it his hand or finger or penis?

MS. MINER: Objection. Leading.

THE COURT: Overruled.

A: His hands.

Upon cross-examination, J.L.K. admitted that the defendant was not in bed with her. There was no explanation as to how she knew she had been touched by defendant when she initially just thought that she was having her period. On re-direct, she gave the following testimony:

Q: Was the bleeding the result of the defendant touching you?

A: I think.

Q: Were you sleeping when you woke up to someone touching you?

A: (Pause.) I don't remember.

The testimony as to whether the defendant touched J.L.K. on a second occasion when she was sleeping with her sibling in defendant's bed is hardly sufficient to find the elements of a touching, whether under or over the clothing. The case as to Count II is, to be sure, weak, contradictory, and confusing. Given the requirement that I must view the evidence in favor of the verdict, I decline to enter a judgment of acquittal. The fact that I would not have convicted the defendant of Count II is immaterial.

## II. Motion for a New Trial.

Fed. R. Crim. P. 33(a) provides that a district court "may vacate any judgment and grant a new trial if the interest of justice so requires." The Eighth Circuit has held that "Rule 33 motions are disfavored and a district court must exercise Rule 33 authority sparingly and with caution." United States v. Broeker, 27 F.4th at 1335 (cleaned up). "Granting such motions 'is reserved for exceptional cases in which the evidence preponderates heavily against the verdict.'" United States v. Iron Crow, 970 F.3d 1003, 1010 (8th Cir. 2020) (quoting United States v. Stacks, 821 F.3d 1038, 1045 (8th Cir. 2016)). I must allow the verdict to stand unless I find that a miscarriage of justice has occurred. United States v. Lacey, 219 F.3d 779, 783 (8th Cir.2000).

My discretion under Rule 33 is quite broad.  This Court "need not view the evidence in the light most favorable to the verdict and it is permitted to weigh the evidence and evaluate the credibility of the witnesses." <u>United States v. Hassan</u>, 844 F.3d 723, 725–26 (8th Cir. 2016) (*citing* <u>United States v. Knight</u>, 800 F.3d 491, 504–05 (8th Cir. 2015)).  If this Court finds there has been "'a miscarriage of justice,'" then a new trial becomes necessary.  <u>United States v. Johnson</u>, 719 F.3d 660, 666 (8th Cir. 2013) (*quoting* <u>United States v. Samuels</u>, 543 F.3d 1013, 1019 (8th Cir. 2008)).

I am troubled by the testimony as to Count I.  I overruled many objections during J.L.K.'s testimony that the government was leading J.L.K.  However, after reviewing the record, it has become clear that leading testimony, together with other circumstances, may have played a large role in this case.

J.L.K. testified on the first day of trial.  During her testimony, she referred to touching her "private" and "down there."  Counsel for the government introduced the term "vagina," and J.L.K. then agreed that is where she was touched.  On the second day, a pediatrician who had conducted an examination of J.L.K. following her 2021 disclosures of abuse testified.  The pediatrician testified that the female genitalia included both internal and external structures.  She testified that the external genitalia includes the labia and the clitoris while the internal genitalia include, *inter alia*, the opening to the vaginal area, the hymenal structure, and the vaginal canal into the uterus.  She testified on cross-examination that J.L.K. stated the touching was on the "outside of the vaginal area."

Counsel for defendant asked the pediatrician if anyone asked the then 13-year-old victim "what does 'outside' mean to you J.L.K.?"  The following testimony ensued:

A:  Sometimes when she was asked "Where is your private part" she did point downward.  She was also asked, "What is that private part used for?"  And she said, "To pee."  And then asked, "Where did he touch?"  And he said -- she said "the outside" of the vaginal area.

Q:  (BY MS. MINER) But "outside" can include areas that are not genitalia.  Correct?

A:  I guess, what do you mean by that question?

6

Q: What I'm saying -- what I'm asking you:  Was she any more specific than simply "outside?"

A: She said where she goes pee.  So in the genitalia, that can be your -- the area is -- the outside is your labia, and then the clitoris is also on the outside of your genitalia.

Q: But she didn't say that, did she?

A: Developmentally we wouldn't say "On what part of the genitalia did he touch?"

Q: She's 13 years old at that time?

A: She was, yes.

Q: What I'm asking is (sic) you: Was she any more specific than "outside?"

A: I don't recall.

On redirect, counsel for the government questioned the pediatrician:

Q: She used the word "vagina" and his fingers touching her vagina?

A: She used "private part," I believe.

Q: And you clarified that to mean that she meant vagina?

A: Where she goes pee.

Q: And that's part of the genitalia?

A: Correct.

As the United States Court of Appeals for the Eighth Circuit long ago instructed, the definition of "sexual act" "is anatomically specific." United States v. Plenty Arrows, 946 F.2d 62, 64 (8th Cir. 1991).  While recognizing that young children may not be familiar with the formal names of the parts of their anatomy, testimony must be more than vague and testimony lacking the necessary specificity cannot support a conviction. Id. at 65.  A review of the transcript shows that J.L.K. did not use the term vagina or genitalia when describing where she was touched.  Although, upon prompting by the government, she stated defendant touched, or attempted to touch, her vagina, she was clear that any touching was on the "outside" which does not include the vagina. Although the government had an anatomical drawing in their proposed exhibits, J.L.K.

7

was not asked to identify in a drawing of a girl's anatomy where the defendant touched her.

The trial outcome was likely affected by another matter. The defendant was interviewed in December 2021, by tribal investigator Woody Hawkins and F.B.I. special agent Daniel Orr about the allegations. The defendant denied the allegations during that initial interview. A second "interview" was conducted by the two original investigators and by F.B.I special agent Timothy Wittman from Minneapolis. The second interview was, in fact, a polygraph. During the polygraph, defendant explicitly denied the allegations by stating "no" when the polygraph examiner asked whether he had engaged in the conduct alleged. The Court is aware that the defendant was deemed to have "failed" the polygraph in that his "no" answers were deemed deceptive by the polygraph examiner. The examiner continued to interview the defendant and question the defendant, telling the defendant he believed defendant did in fact touch J.L.K.'s vagina as alleged. The defendant thereafter responded to each question with what the government characterized as "mmhmm" in the government's prepared transcript of that portion of the interview. F.B.I. Special Agent Wittman characterized defendant's responses during this portion of the interview as an "acknowledgement of hearing what I said." The actual audio recording was played during open court and it was very difficult to hear the defendant's responses. Of course, the jury was not made aware that the recorded statements were made during a polygraph examination. Only the audio recording of the defendant's answers to questioning after being told by the examiner that he was being deceptive were played for the jury. Although, on cross-examination, the polygraph examiner admitted that the defendant had denied the allegations earlier in his statement, the jury was unaware that the change from "no" answers to "mmhmm" answers followed being told that a machine indicated defendant was lying.

At the government's request, I instructed the jury, *inter alia*, pursuant to Eighth Circuit Model Criminal Jury Instruction 4.14 that the jury may consider "that a statement accusing the defendant of a crime charged in the Indictment was made, and that the defendant did not at that time deny the accusation, object to, or contradict the statement."

Instruction No. 9. During questioning of Agent Wittman, the government asked (stated) whether the defendant denied the agent's accusations and the agent testified that, at this time during the interview, the defendant did not deny the accusations.

During closing arguments, counsel for the government read Instruction No. 9, argued that the defendant (although he initially denied the offense conduct in the first interview) did not deny the allegations in the recorded portion of the second interview.

The Court, in response to a defense objection to the government's argument that the defendant did not continue to deny the allegations, stated "when the agent was in effect accusing him, he said 'mmhmm.'" The Court's diction of "mmhmm" could have been interpreted as an assent, or admission, by the defendant. The Court did state that it is up to the jury to determine what "mmhmm" means. The government then argued that the jury may consider whether the defendant's silence in response to the accusation that defendant touched J.L.K.'s vagina was in fact an admission. The Court then interrupted counsel for the government and stated "well he was not silent, he stated 'mmhmm," whatever that means."

We know that, "[a]lthough the results of a polygraph examination and a refusal to take a polygraph may not be admissible, the responses to questions asked during the polygraph are admissible evidence." Rothgeb v. United States, 789 F.2d 647, 651 (8th Cir. 1986), *citing* Wyrick v. Fields, 459 U.S. 42, 48 n. *, 103 S.Ct. 394, 396 n. * 74 L.Ed.2d 214 (1982). The concern in this case is not whether the defendant's responses were voluntary but that his responses after the polygraph were not explicitly inculpatory or exculpatory. Due to the fact that the defendant's denials took place during the polygraph examination, the defense could not play that portion of the interview for the jury without opening the door to evidence that the F.B.I. deemed defendant's denials were lies. When I decided to give Instruction No. 9, over the objections of the defendant, I was not aware that the statements made to the defendant were part of the polygraph procedure. I should not have given that instruction which was unfairly prejudicial to the defendant. Justice requires a new trial. I regret that the granting of the motion will subject the young victim to another trial ordeal but I cannot avoid it.

9

For that same reason, the nature of the questions asked during the polygraph to which the defendant denied could not be explored. The nature of the questions asked in the recorded portion of the interview played to the jury was clear. The agent first stated that he thought the defendant did touch J.L.K.'s vagina. Then the agent told the defendant that the agent thought defendant was a hardworking, dependable, reliable guy. Finally, the agent told the defendant a false story about another perpetrator who touched a child under circumstances that the agent described as a "mistake." The defendant's response was the same to each and every statement by the agent. However, the jury could not hear the type of question which defendant denied, or even the nature of his denials (vehement or otherwise).

Another concern is that the transcript of the recorded statement shown to the jury begins as follows:

| | |
|---|---|
| SA Timothy Wittman: | Looking at that, really quickly, it's absolutely clear you did touch her vagina. |
| Thomas Avery Drum: | Mmhmm |
| SA Timothy Wittman: | No doubt in my mind that you touched her vagina. |
| Thomas Avery Drum: | Mmhmm |
| SA Timothy Wittman: | Now, like I said, this is not the most serious of allegations. |
| Thomas Avery Drum: | Mmhmm |

"Looking at that," together with the evidence and objections and discussion in front of the jury that there was a portion of the interview that could not be played certainly raises some concerns about whether the jury could have known the defendant took and "failed" a polygraph. I am mindful of the fact that a conviction on Count I will subject the defendant to a mandatory thirty year minimum sentence, a sentence that would otherwise never be imposed taking into account the virtually spotless previous record of the defendant, his age, his record of public service to his country, the fact that he has custody of other minor children who need him, and all the facts of this case. The mandatory minimum in this case is nothing short of outrageous.

All of the foregoing, taken together, leaves the Court with the belief that the interests of justice require a new trial.

## ORDER

Based upon the foregoing,

IT IS ORDERED that defendant's motion, Doc. 88, for a new trial is granted.

IT IS FURTHER ORDERED that the motion, Doc. 88, for judgments of acquittal is denied as to both counts.

DATED this 22 Nd day of January, 2023.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge