UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>THOMAS AVERY DRUM,<br><br>Defendant. | 1:22-CR-10040-CBK<br><br><br>ORDER |

As the record shows, I granted a new trial based on what I thought was an error by the court in allowing the jury to consider what the defendant said as he listened to the government law officer claim that he had "failed" the polygraph. As to each statement by the agent as to what he believed based on the polygraph, the defendant stated "mm-hmm". I ultimately concluded that these were not admissions of guilt but only acknowledgments of "following along" as Mr. Drum listened to the statements. Of course, I did not intend to admit the polygraph "results" but I went with what I thought on hindsight was "too far" in allowing the jury to consider whether what the defendant was saying amounted to confessions. I overruled all objections by the defendant to the jury instruction and the admission of the evidence.

On appeal, the United States Court of Appeals for the Eighth Circuit ruled that I had no authority to grant a new trial on grounds not directly raised by the attorney for the defendant in a motion for new trial. The decision was an issue of first impression by the Eighth Circuit. As I recall, only one other Circuit had so ruled. All of that, of course, despite the one dissent as to Count I (which carries the mandatory 30 year minimum) is the law of the case.

I am now faced with having to sentence the defendant to one of the offenses which carries, by statute, a mandatory minimum 30 year sentence. In my over 30 years as a federal judge, I have imposed a large number of such sentences. I may be mistaken but I believe I have been the sentencing judge in more sexual abuse of children cases than any other judge ever. At one time, when I presided over all cases (prior to taking senior status) in the central division (Pierre) and the northern division (Aberdeen), I had the third highest criminal case load of any federal judge in the United States. I have been appalled by the number of cases involving sexual abuse of children in the Reservations in South Dakota. I was the judge for Rosebud, Standing Rock, Sisseton or Lake Traverse, Lower Brule, Cheyenne River, and Crow Creek Reservations. I have also been appalled by the incidents of extreme conduct in those cases. The present case involves only sexual contact misconduct by Mr. Drum. It pales in comparison with the thousands of other cases I have seen. The District of South Dakota has the second highest per capita sex offender caseload in the country.

I have frankly dreaded the day of sentencing. It takes me back to the days of the Guidelines being mandatory, a time period in which I imposed sentences that I knew very well were not fair or logical. I remember sentencing an 18 year old man who had given methadone to another addict who wanted the drug and died. It was virtually unknown for methadone to be deadly. It was often used to "wean" drug addicts from their additions. The parents of the deceased boy came to court asking for mercy for the defendant. I imposed a mandatory 20 year sentence as required by the Guidelines since I had no choice. I have never forgotten that case.

I know I am now directed by Congress to impose a sentence that is grossly unfair and which shocks my conscience. It flies in the face of the statutory factors under 18 U.S.C. § 3553. Not only is the criminal conduct very minimal but the criminal record of the defendant is nil. He

has zero criminal history points. I have never understood why the Sentencing Commission uses Criminal History Category I when a defendant has zero criminal history points. In other words, this defendant has no applicable criminal history at all, not Category I. An offender with zero points can receive a reduction in the offense level under 4C1.1 but not in a sexual offense case.

Mr. Drum has been a very good citizen for many years. He served his country in the military for fifteen years and retired as a non-commissioned officer. He received many commendations and awards during his military service. He was deployed to Iraq and Kuwait with the National Guard. He has always supported his family financially. He has had custody of other small children and has done a good job raising and caring for these children. He is over 60 years of age. He would have been 50 years old when the misconduct occurred.

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." "The Supreme Court has understood this provision to forbid "only extreme sentences that are 'grossly disproportionate' to the crime.'" Harmelin v. Michigan, 501 U.S. 957, 1001, 111 S.Ct. 2680, 2705, 115 L.Ed. 836 (1991). "[S]uccessful challenges to the proportionality of particular sentences are exceedingly rare." United States v. Paton, 535 F.3d 829, 837 (8th Cir. 2008). *See* United States v. Wiest, 596 F.3rd 906, 911 (8th Cir. 2010). (It is exceedingly rare for an offense that does not have a capital sentence to violate the Eighth Amendment.").

In applying Harmelin, the United States Court of Appeals for the Eighth Circuit has instructed that:

> In deciding whether a sentence is "grossly disproportionate" to a crime, Harmelin, 501 U.S. at 1005, 111 S.Ct. 2680, we first compare the gravity of the offense committed to the harshness of the penalty imposed. *See id.* at 1001-02, 111 S.Ct. 2680 (opinion of Kennedy, J.). To evaluate the severity of a crime, we consider the harm caused or threatened to the victim or to society and the culpability and degree of involvement of the defendant. *See* Solem, 463 U.S. at 292, 103 S.Ct.

3

> 3001. In considering the culpability of the defendant, the court may look to the defendant's intent and motive in committing the crime. *See id.* at 293, 103 S.Ct. 3001.
>
> In assessing the seriousness of a crime, we first address the actual or potential harm that he caused to the victim or to society. Although drug crimes generally are considered serious, see Harmelin, 501 U.S. at 1002, 111 S.Ct. 2680 (opinion of Kennedy, J.), see also United States v. Meirovitz, 918 F.2d 1376, 1381 (8th Cir.1990), *cert. denied,* 502 U.S. 829, 112 S.Ct. 101, 116 L.Ed.2d 71 (1991), we believe that it denies reality and contradicts precedent to say that all drug crimes are of equal seriousness and pose the same threat to society. In Solem, 463 U.S. at 293, 103 S.Ct. 3001, the Supreme Court remarked on the importance that the "absolute magnitude" of the crime may play in assessing the harm that it causes or threatens, and the plurality in Harmelin, 501 U.S. at 1002, 1007-09, 111 S.Ct. 2680 (opinion of Kennedy, J.), repeatedly emphasized the amount of cocaine involved in the crime in explaining why the defendant's sentence did not violate the Eighth Amendment.

Henderson v. Norris, 258 F.3d 706, 709 (8th Cir. 2001). In Henderson v. Norris, the Eighth Circuit held that distribution of "three 'rocks' of cocaine base, or crack" which weighed less than one-quarter of a gram, the price for which was a mere $20, was not proportional to the life sentence imposed.

In United States v. LaFond, 692 F. App'x 242, 243 (6th Cir. 2017), the defendant appealed the judgment and sentence entered by the district court sentencing the defendant to a thirty-year mandatory minimum term of imprisonment for engaging in a sexual act with a minor. The defendant claimed that his thirty-year mandatory minimum term of imprisonment violated the Eighth Amendment's prohibition against cruel and unusual punishment. He argued that his thirty-year sentence was grossly disproportionate because he had no prior criminal history, he was a victim of sexual abuse himself, and that, "given the life expectancy in prison for individuals of his age and race, he will likely not live to see the end of his sentence." United States v. LaFond, 692 F. App'x 242, 243 (6th Cir. 2017).

4

The Court in LaFond applied the Harmelin precedent by first comparing the gravity of the offense committed to the harshness of the penalty imposed, to determine whether a sentence for a term of years is grossly disproportionate for defendant's particular crime. The Court also articulated four principles that give "content to the uses and limits of proportionality review." Id.

The first of these principles is that the fixing of prison terms for specific crimes involves a substantive penological judgment that, as a general matter, is 'properly within the province of legislatures, not courts.'" Id. at 998, 111 S.Ct. 2680 (quoting Rummel v. Estelle, 445 U.S. 263, 275–76, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980)). In other words, mandatory minimum prison terms determined by the legislature are not to be interfered with casually, and courts "should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes." Solem, 463 U.S. at 290, 103 S.Ct. 3001. "The second principle is that the Eighth Amendment does not mandate adoption of any one penological theory." Harmelin, 501 U.S. at 999, 111 S.Ct. 2680. The third principle is that the "marked divergences both in underlying theories of sentencing and in the length of prescribed prison terms are the inevitable, often beneficial, result of the federal structure." Id. The fourth principle "is that proportionality review by federal courts should be informed by objective factors to the maximum possible extent. Id. at 1000, 111 S.Ct. 2680.

The LaFond court stated that the four principles "and the requirement that proportionality review be guided by objective factors—inform the final principle: The Eighth Amendment does not require strict proportionality between crime and sentence." Id. at 1001, 111 S.Ct. 2680. Rather, the Eighth Amendment "forbids only extreme sentences that are 'grossly disproportionate' to the crime." United States v. LaFond, 692 F. App'x 242, 245 (6th Cir. 2017). The LaFond appellate court applied the rules set forth in Harmelin, affirmed the lower court's

decision, and held that the defendant's thirty-year sentence was not a violation of the Eighth Amendment.

The court reasoned that LaFond was not one of those "exceedingly rare circumstances" in which the specified term of imprisonment violated the Eighth Amendment. The court also noted that regarding the threshold comparison of the crime committed and the sentence imposed, such a comparison did not lead to an inference of gross proportionality. The court also made note of the vast precedent that addressed the seriousness of crimes involving the sexual abuse of children and the harm caused by such crimes. A concurring judge also noted that, "Clearly mandatory 30-year sentences should not be used," but also stated that "the Eighth Amendment, as currently interpreted by the Supreme Court, does not authorize us to deviate from the congressionally mandated minimum 30-year sentence." Id.

Neither this Court nor the United States Court of Appeals for the Eighth Circuit are bound by a case decided in the Sixth Circuit. In LaFond, there was actual penetration and the defendant was rubbing his penis all over the body of the victim. The facts were much more grievous than the present case. In the present case, at best, there was one attempt at penetration which did not occur. There was no penetration of any kind. The trial judge in LaFond did not decide that the sentence was either cruel or unusual. With such first-hand knowledge and action, it is not surprising that the trial court was affirmed. In the present case, JFL at age 13 disclosed what she said happened to her at age 7. Various allegations were made to interviewers of the victim but what counts is what testimony under oath there was at trial. Upon cross examination, JFL testified that defendant touched her only once when she was in the bathroom. She had told an interviewer that, on another occasion, she woke up in bed with a small amount of blood in her underwear, not that she was bleeding all over the bed. She thought it was her period and she

6

testified that the defendant was not in the bed, but was in another room on a couch. She wanted to go home and the defendant took her home. On re-direct, the prosecutor asked her if the bleeding was the result of the defendant touching her and she replied, "I think." I am today of the same opinion I expressed on the record to counsel in a hearing out of the presence of the jury, namely that J.L.K's testimony was "all over the map" and "difficult to follow." I later said on the record that J.L.K. was "all over the map with different versions" but that I would "deal with that after [it] saw what the jury did." I never did "deal with it" properly since I granted a new trial. I should have found that there was insufficient evidence to convict on Count II.

There is nothing in the record to even indicate that JFL was harmed, either physically or mentally. As far as could be determined, she had no "after effects." No victim impact statement of any kind has been filed, even at this late date.

It is the rather common practice in this District for the indictment to charge, in cases of sexual abuse of a child, aggravated sexual abuse of a child under 12, a violation of 18 U.S.C. 1153, 2241 (c), and 2246(2)(D). This Count, as we know, carries upon conviction the 30 year statutory minimum. Any defendant and his attorney are going to look long and hard at their chances before going to trial facing that penalty. Unless the facts are in themselves sufficiently egregious, a plea agreement usually results to a plea of guilty to abusive sexual contact of a child, in violation of 18 U.S.C. 1153, 2244(a)(5) and 2246(3), and the defendant is sentenced accordingly.

I attach a small listing of other sexual abuse of children cases in which I have presided. I have compared the conduct in those cases with the conduct of the defendant in the present case.

I conclude that the mandatory 30 year minimum sentence, in this case, as applied to Mr. Drum, violates the provision of the Eighth Amendment prohibiting "cruel and unusual

punishment." The sentence would be an extreme sentence that would be grossly disproportionate to the crime charged in Count I. I fully realize that I may be acting contrary to other Eighth Amendment cases but I must do what I think is just and legally correct. If I have ruled incorrectly, the Court of Appeals will tell me so.

DATED this 4th day of December, 2025.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

8